# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| MARGARET M. KOLET, ) | |
| ) | |
| Plaintiff, ) | |
| ) | DOCKET NO. 3:24-cv-01270 |
| v. ) | |
| ) | 12 PERSON JURY DEMANDED |
| UNITED GROUND EXPRESS, INC. ) | |
| d/b/a UNITED AIRLINES, ) | |
| ) | |
| Defendant. ) | |

## AMENDED COMPLAINT FOR DAMAGES

Comes now, Margaret M. Kolet (hereinafter referred to as "Plaintiff" or "Kolet") by and through counsel and hereby provides facts and law in support of her Complaint filed against United Ground Express, Inc. d/b/a United Airlines (hereinafter referred to as "United Ground" or "Defendant"). This Amended Complaint is filed under Federal Rule of Civil Procedure 15. The Plaintiff would show unto the Court as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, Margaret M. Kolet, is a citizen and resident of the State of Tennessee during the events relevant to this case as outlined in the Complaint. Plaintiff worked for United Ground in the State of Tennessee during the events outlined in this Complaint.

2. Defendant United Ground Express, Inc. is a corporation doing business within Davidson County Tennessee at the location where Plaintiff worked during the events outlined in the Complaint. The principal address of Defendant United Ground is 233 S. Wacker Drive, Chicago, IL 60606. The registered agent for Defendant United Ground is CT Corporation System, 300 Montvue Road, Knoxville, TN 37919.

3. Venue and jurisdiction are appropriate in this Court. The Tennessee Human Rights Act provides for jurisdiction in this Court as provided in T.C.A. § 4-21-311. The acts stated herein, and the employment of the Plaintiff occurred primarily within Davidson County, Tennessee.

**FACTS**

4. Plaintiff began working for Defendant United Ground in approximately November 2022. The Plaintiff worked and works as a Trainer for Defendant. She has a direct supervisor above her. The next level above that supervisor was General Manager Bradley Wagland during the events outlined in this Complaint. Bradley Wagland was the General Manager and was in the direct chain of supervisory authority above the Plaintiff. He was the head United Ground employee at the Nashville location where Plaintiff works. Bradley Wagland had the ability to hire employees and terminate employees in consultation with Human Resources. Bradley Wagland had the ability to punish Plaintiff in her employment and take employment actions against her. Bradley Wagland often talked about terminating employees and threatening employees with termination, even for trivial matters.

5. During Plaintiff's employment, she was subjected to sexual harassment, sexually hostile work environment, hostile work environment due to sex, retaliation and sex discrimination from the Defendant. The individual who performed these actions against the Plaintiff was a much higher-level employee, General Manager Bradley Wagland, who is the head of the location where Plaintiff worked. The Defendant had full knowledge of prior sexual harassment and sexually improper actions from General Manager Bradley Wagland, through its supervisors' and managers' knowledge. Despite

this prior knowledge, the Defendant continued to employ General Manager Bradley Wagland and purposefully and intentionally protected Bradley Wagland (through the actions of its supervisors and managers). This was an intentional and purposeful action by the Defendant which was intended to harm female employees at the Defendant, including the Plaintiff. This action by the Defendant was intentional and the Defendant provided a safe place for General Manager Bradley Wagland to prey on women by pursing inappropriate sexual relationships with them, despite the fact that he was a much higher-level employee and had a significant amount of power over the employment of these female employees. General Manager Bradley Wagland openly abused his power towards women.

6. The conduct directed at the Plaintiff, as described in this Complaint, was unwanted and unwelcome. The Plaintiff did not want or welcome this conduct, but instead felt compelled to participate in certain behaviors with the General Manager, against her will, due to his position at the Defendant, his abuse of authority and due to discouragement from other supervisors and managers related to reporting and/or objecting to Bradley Wagland's conduct. The Plaintiff was subjected to the following inappropriate sexual harassment, sexually hostile work environment, hostile work environment due to sex, retaliation and sex discrimination conditions at Defendant United Ground during the time she worked at Defendant United Ground, starting in early 2024 and continuing until September 2024 when Bradley Wagland left United Ground:

  a. General Manager Bradley Wagland was flirtatious to the Plaintiff at work, in a way that was different from how he treated male employees.

b.  General Manager Bradley Wagland joked and talked to the Plaintiff in a way that showed personal attention directed at her that he did not direct toward male employees in the same way.

c.  General Manager Bradley Wagland commented on the Plaintiff's looks.

d.  General Manager Bradley Wagland told the Plaintiff, while at work, that one of the first things he noticed about her was her looks.

e.  On a work trip in May 2024, the Defendant, through multiple managers, hosted an event which included alcohol. Plaintiff blacked out and does not recall exactly what happened during these events but General Manager Bradley Wagland was flirtatious toward Plaintiff during this event.

f.  While at work, General Manager Bradley Wagland touched the Plaintiff on her back, knee, shoulder and badge in an inappropriate way that was unnecessary and inappropriate for a supervisor. This was sexual in nature.

g.  General Manager Bradley Wagland added the Plaintiff on Snapchat and asked her to communicate with him on Snapchat.

h.  General Manager Bradley Wagland told the Plaintiff, via Snapchat, the things that he wanted to do to her sexually. On one occasion he messaged her, that he wanted to move her hand onto his penis.

i.  General Manager Bradley Wagland messaged the Plaintiff while at work about doing things with her sexually.

j.  General Manager Bradley Wagland sent Plaintiff an unsolicited picture of him in his underwear, from the waist down, via Snapchat. The Plaintiff then

4

responded that she did not want him to send her any inappropriate pictures of any kind and he acknowledged this request.

k. Shortly after sending the first inappropriate photo in his underwear, General Manager Bradley Wagland started to send Plaintiff pictures of his penis. This included pictures of his penis while he was masturbating and stroking his penis. Plaintiff was very confused and did not know how to respond to these overtly sexual pictures that were being sent to her after she asked her General Manager to not send pictures of this nature. Plaintiff felt very intimidated and felt that General Manager Bradley Wagland was abusing his authority and his position, causing Plaintiff fear for her job, in trying to have sexual interactions with the Plaintiff.

l. General Manager Bradley Wagland asked the Plaintiff to send pictures to him on multiple occasions. Plaintiff resisted him, but General Manager Bradley Wagland kept asking and Plaintiff felt fear for her job given his position and authority and his insistence on her providing him with pictures.

m. General Manager Bradley Wagland then told the Plaintiff that he wanted her to come to his apartment and take off her clothes and get into bed with him. He sent this message to Plaintiff while she was working. The Plaintiff was scared, intimidated and did not know how to respond. The pressure from General Manager Bradley Wagland was very substantial and Plaintiff told him that she was scared to do what he asked. The Plaintiff felt like she had no other option but to comply with General Manager Bradley Wagland's requests because of the pressure he was putting on her. General Manager

5

Bradley Wagland used his authority and position to compel Plaintiff to have sexual intercourse with him.

n. Following this initial encounter, General Manager Bradley Wagland stopped communicating with Plaintiff for some time and then sent her a message telling her that he thought it would be hot for her to come over and "suck him off" and then leave. He started sending these messages to Plaintiff while she was working. Once again, Plaintiff felt pressure to do this because of his position and felt like she could not say no. Additionally, in between these two sexual encounters, Plaintiff talked to a supervisor about reporting a General Manager for his inappropriate conduct and Plaintiff was discouraged by the supervisor about reporting such conduct. Plaintiff believes this supervisor knew that Plaintiff was talking about General Manager Bradley Wagland.

o. Shortly after the second sexual encounter, General Manager Bradley Wagland messaged Plaintiff asking her to have anal sex with him and that he wanted to see his "cum run down" her legs. Plaintiff did not do this with General Manager Bradley Wagland and, shortly thereafter, he ended the communications and told her that everything needed to be professional from that point on. General Manager Bradley Wagland mostly stopped talking to the Plaintiff and avoided her at work.

7. Shortly after General Manager Bradley Wagland told the Plaintiff to communicate with him on Snapchat, Plaintiff screenshotted a Snapchat message to try to protect herself from this conduct. General Manager Bradley Wagland was alerted that

she did this via Snapchat and then instructed and demanded to the Plaintiff that she delete this screenshot. He messaged her on Snapchat and asked, "why did you save that snap". He then told her that she needed to delete it. General Manager Bradley Wagland also instructed the Plaintiff that she was not to tell anyone at work about their communications or interactions. He forced the Plaintiff, on Snapchat, to say that she would never tell anyone about their interactions. Before making sexual comments to the Plaintiff, he instructed the Plaintiff that if he tells her some things, she "cannot tell anyone at work, or anyone". Plaintiff took this as a threat against her job if she were to report or tell anyone at work about what was going on from the General Manager. On one occasion, Plaintiff told General Manager Bradley Wagland that he was very "careful at work". General Manager Bradley Wagland responded that "I've been doing this a long time" and then he said, "so I know how to handle it".

8. In between the first sexual encounter and the second sexual encounter (detailed above), Plaintiff talked to a supervisor about how to report situations involving sexual relations between the General Manager and a frontline employee. It became clear that the supervisor knew the situation involved General Manager Bradley Wagland. The supervisor discouraged Plaintiff from reporting against him due to his power and authority. He told the Plaintiff that she needed the right people in her corner, or the report would go nowhere, and it would be better to say nothing. This greatly discouraged the Plaintiff and made her feel hopeless in this situation.

9. Additionally, Plaintiff had been told by supervisors and managers on multiple occasions about the power that Bradley Wagland had at the station where they worked. Management made it clear that General Manager Bradley Wagland gets

7

whatever he wants and that he has the same influence as a Regional Manager. Further, he had a personal relationship with his boss and was highly favored within United Ground.

10. After General Manager Bradley Wagland no longer had use for the Plaintiff in a sexual way, he then started having Plaintiff travel a lot. He modified the job of Plaintiff, changing her to training from the primary airline, United Airlines, to Alaska airlines. The training for United Airlines is a much more visible role within the station and corporate, when compared to training for Alaska Airlines. This impacted Plaintiff's job status in a material way. Further, this change was made by General Manager Bradley Wagland because it made it easier for him to have Plaintiff travel frequently, getting her away from the Nashville airport where he was located. Plaintiff was travelling on a consistent basis, unlike what she had done before this situation occurred. This travel impacted Plaintiff and her family, as she was away from home much more. Additionally, General Manager Bradley Wagland started to provide Plaintiff with cold-shoulder treatment. He mostly stopped talking to the Plaintiff. He stopped training and helping the Plaintiff in the ways he had done before the sexual encounters. It was very clear that General Manager Bradley Wagland was retaliating against the Plaintiff by withdrawing his assistance and communications in her job, and further by making sure she was away from Nashville in a less desirable role. Plaintiff was treated differently after the sexual harassing events than she was treated prior to the time the sexual harassing events occurred. This was retaliation against Plaintiff.

11. Plaintiff reported some of what happened with General Manager Bradley Wagland to a supervisor, and he immediately asked the Plaintiff if Bradley Wagland "sent you pictures on Snapchat" and asked how this happened. The supervisor then said, "this

8

is what he does". The supervisor clearly knew, from past events, how Bradley Wagland pursued lower-level employee women at United Ground. The supervisor was surprised that he did this with Plaintiff and said "normally this is done with women 25 years of age or under". The supervisor told the Plaintiff that he has had three women come to him about General Manager Bradley Wagland in the past stating that sexual things happened to them, but that this issue was never taken to Human Resources. The Plaintiff was told that there had been a lot more women that this had happened to at United Ground by General Manager Bradley Wagland. Plaintiff was told that General Manager Bradley Wagland would do sexual things with female employees and would then get them to either quit or get them a promotion or move them elsewhere. Plaintiff was also told by the supervisor that General Manager Bradley Wagland had "stuff" over the other supervisors, and that this kept the other supervisors quiet. He specifically stated that he had the other supervisors "by the balls" and that is why they would not say anything. Further, a supervisor told the Plaintiff that Bradley Wagland normally does not stay at a station too long because "his body count gets too high". This is referring to his sexual encounters with lower-level employees. Further, the supervisor told Plaintiff that General Manager Bradley Wagland has openly said that "the best ones are the quiet ones" because they would not talk about the sexual interactions. This supervisor was adamant that Plaintiff not share his name with HR, if she went to HR about this situation. This supervisor had Plaintiff call him on his personal cell phone to discuss HR even though he was at work.

12. Ultimately, General Manager Bradley Wagland was allowed to resign his position by Defendant United Ground. He should have been terminated for clear violations of the Defendant's policies. Upon information and belief, multiple women had

9

and have reported General Manager Bradley Wagland for the same type of behavior that was directed at the Plaintiff.  The Defendant willfully and intentionally ignored these reports (through supervisors and managers) and failed to take appropriate action to protect women in the workplace.  Instead, the Defendant allowed General Manager Bradley Wagland to continue to sexually harass and create a sexually hostile work environment for female employees at the Defendant. This ultimately caused Plaintiff to be constructively discharged from her job. Plaintiff, based on the facts of this case and the failures of the Defendant, felt she had to protect herself and felt compelled to resign her position at the Defendant on October 15, 2024, which was a constructive discharge of her job.

13. The actions of the Defendant have caused the Plaintiff to suffer severe mental injury. The sexual harassment, sex discrimination, sexually hostile work environment, hostile work environment based on sex and retaliation have caused the Plaintiff to experience nausea, sleeplessness, depression, anxiety, crying, being emotionally on edge, nightmares, fright, grief, sadness, shame, humiliation, embarrassment, anger, resentment, disappointment, worry, fear, stress, lack of motivation, view of men differently in the workplace and has affected Plaintiff's work ethic. Further, this situation has affected Plaintiff's relationship with her husband. It also caused Plaintiff to lose her job and career at the Defendant and resulted in lost wages as a result. The intensity and frequency of the issues outlined in this paragraph of the Complaint have been constant and significant since the sexual harassing, sexually discriminatory and sexually hostile work environment conduct began, through the present.

# COUNT I – SEXUAL HARASSMENT, SEXUALLY HOSTILE WORK ENVIRONMENT, HOSTILE WORK ENVIRONMENT DUE TO SEX, SEXUAL DISCRIMINATION AND RETALIATION UNDER THE TENNESSEE HUMAN RIGHTS ACT AGAINST DEFENDANT

14. Plaintiff incorporates all paragraphs and allegations in this Complaint listed above as fully alleged herein within Count I of this Complaint.

15. The sexual harassment, sexually hostile work environment, hostile work environment due to sex, retaliation and sex discrimination of Plaintiff by Defendant constituted discriminatory practices as defined in the Tennessee Human Rights Act as defined T.C.A. § 4-21-102(4) and T.C.A. § 4-21-401.

16. The sexual harassment, sexually hostile work environment, hostile work environment, retaliation and sex discrimination due to the Plaintiff's sex violate the Tennessee Human Rights Act.

17. Defendant was an "employer" of Plaintiff as defined in the Tennessee Human Rights Act. Defendant had at all relevant times to this case, in excess of 8 employees. Defendant had at all relevant times to this case, in excess of 14 employees. Defendant had at all relevant times in this case, in excess of 100 employees. Defendant had at all relevant times in this case, in excess of 200 employees. Defendant had, at all relevant times to this case, in excess of 500 employees.

18. There is a proximate causal connection between the sexual harassment, sex discrimination, hostile work environment, retaliation and sexually hostile work environment (discussed above in detail) from Defendant that she suffered at her place of employment, associated with her female gender. The sexual harassment, sex discrimination, hostile work environment, retaliation and sexually hostile work environment demands on the Plaintiff were specifically because she was female. The

11
EE Kolet Complaint Amended 241104

# COUNT I – SEXUAL HARASSMENT, SEXUALLY HOSTILE WORK ENVIRONMENT, HOSTILE WORK ENVIRONMENT DUE TO SEX, SEXUAL DISCRIMINATION AND RETALIATION UNDER THE TENNESSEE HUMAN RIGHTS ACT AGAINST DEFENDANT

14. Plaintiff incorporates all paragraphs and allegations in this Complaint listed above as fully alleged herein within Count I of this Complaint.

15. The sexual harassment, sexually hostile work environment, hostile work environment due to sex, retaliation and sex discrimination of Plaintiff by Defendant constituted discriminatory practices as defined in the Tennessee Human Rights Act as defined T.C.A. § 4-21-102(4) and T.C.A. § 4-21-401.

16. The sexual harassment, sexually hostile work environment, hostile work environment, retaliation and sex discrimination due to the Plaintiff's sex violate the Tennessee Human Rights Act.

17. Defendant was an "employer" of Plaintiff as defined in the Tennessee Human Rights Act. Defendant had at all relevant times to this case, in excess of 8 employees. Defendant had at all relevant times to this case, in excess of 14 employees. Defendant had at all relevant times in this case, in excess of 100 employees. Defendant had at all relevant times in this case, in excess of 200 employees. Defendant had, at all relevant times to this case, in excess of 500 employees.

18. There is a proximate causal connection between the sexual harassment, sex discrimination, hostile work environment, retaliation and sexually hostile work environment (discussed above in detail) from Defendant that she suffered at her place of employment, associated with her female gender. The sexual harassment, sex discrimination, hostile work environment, retaliation and sexually hostile work environment demands on the Plaintiff were specifically because she was female. The

unwelcomed sexual harassment, sex discrimination, hostile work environment, retaliation and sexually hostile work environment suffered by Plaintiff at the Defendant affected the terms, conditions and privileges of her employment solely based on her sex.

19. Defendant had full knowledge of all the harassing actions. Defendant failed to protect the Plaintiff from the grotesque and reprehensible sexual harassment, sex discrimination, hostile work environment, retaliation and sexually hostile work environment. Defendant did not take steps to sufficiently control or stop the sexual harassment, sex discrimination, hostile work environment, retaliation and sexually hostile work environment at Defendant. Plaintiff was expected to work within the environment provided by Defendant as described in this Complaint. Further, the Plaintiff was not promoted, as outlined above, due to her female gender. Plaintiff was also constructively discharged from her job.

20. The Plaintiff is entitled to compensatory damages including back pay, front pay, interest, damages for humiliation and embarrassment proximately caused by the sexual harassment, sex discrimination, hostile work environment, retaliation, and sexually hostile work environment at Defendant. The actions of the Defendant have caused the Plaintiff to suffer severe mental injury. The sexual harassment, sex discrimination, sexually hostile work environment, hostile work environment based on sex and retaliation have caused the Plaintiff to experience nausea, sleeplessness, depression, anxiety, crying, being emotionally on edge, nightmares, fright, grief, sadness, shame, humiliation, embarrassment, anger, resentment, disappointment, worry, fear, stress, lack of motivation, view of men differently in the workplace and has affected Plaintiff's work ethic. Further, this situation has affected Plaintiff's relationship with her husband. It also caused

Plaintiff to lose her job and career at the Defendant and resulted in lost wages as a result. The intensity and frequency of the issues outlined in this paragraph of the Complaint have been constant and significant since the sexual harassing, sexually discriminatory and sexually hostile work environment conduct began, through the present. Further, under the Tennessee Human Rights Act, the Plaintiff is entitled to an award of attorney's fees and costs for this litigation.

## **COUNT II – NEGLIGENCE AGAINST DEFENDANT**

21. Plaintiff incorporates all paragraphs and allegations in this complaint listed above as fully alleged herein within Count II of the Complaint.

22. Defendant was negligent in its conduct in failing to protect the Plaintiff from the conduct of their employees, that occurred during work and work hours and related to work, as more fully described in the Complaint listed above.

23. Defendant knew or should have known of the conduct of their employees and agents, as outlined in this Complaint above. Defendant acted negligently in failing to comply and enforce their policies and procedures as well as appropriate conduct required by their employees. Further Defendant was negligent in failing to appropriately protect the Plaintiff from the conduct of their employees that it knew of or should have known of as outlined more fully above in the Complaint.

24. Defendant had a duty to the Plaintiff based on its knowledge and their relationship with her as an employee. Defendant breached that duty as outlined in the facts more fully detailed above.

25. The actions of the Defendant have caused the Plaintiff to suffer severe mental injury. The sexual harassment, sex discrimination, sexually hostile work

environment, hostile work environment based on sex and retaliation have caused the Plaintiff to experience nausea, sleeplessness, depression, anxiety, crying, being emotionally on edge, nightmares, fright, grief, sadness, shame, humiliation, embarrassment, anger, resentment, disappointment, worry, fear, stress, lack of motivation, view of men differently in the workplace and has affected Plaintiff's work ethic. Further, this situation has affected Plaintiff's relationship with her husband. It also caused Plaintiff to lose her job and career at the Defendant and resulted in lost wages as a result. The intensity and frequency of the issues outlined in this paragraph of the Complaint have been constant and significant since the conduct began, through the present.

## **COUNT III – GROSS NEGLIGENCE AND RECKLESSNESS AGAINST DEFENDANT**

26. Plaintiff incorporates all paragraphs and allegations in this Complaint listed above as fully alleged herein within Count III of the Complaint.

27. Defendant was grossly negligent and reckless in their conduct in failing to protect the Plaintiff from the conduct of their employees that occurred on the premises as more fully described in the Complaint listed above.

28. Defendant knew or should have known of the conduct of their employees in making inappropriate comments and actions directed at Plaintiff as outlined in the Complaint.

29. Defendant knew or should have known of the conduct of its employees, as outlined in this Complaint above. Defendant acted with gross negligence and recklessness as outlined more fully above in this Complaint through their employees and managers. Defendant had a duty to the Plaintiff and breached that duty as outlined in the facts more fully detailed above.

14

30. The actions of the Defendant have caused the Plaintiff to suffer severe mental injury. The sexual harassment, sex discrimination, sexually hostile work environment, hostile work environment based on sex and retaliation have caused the Plaintiff to experience nausea, sleeplessness, depression, anxiety, crying, being emotionally on edge, nightmares, fright, grief, sadness, shame, humiliation, embarrassment, anger, resentment, disappointment, worry, fear, stress, lack of motivation, view of men differently in the workplace and has affected Plaintiff's work ethic. Further, this situation has affected Plaintiff's relationship with her husband. It also caused Plaintiff to lose her job and career at the Defendant and resulted in lost wages as a result. The intensity and frequency of the issues outlined in this paragraph of the Complaint have been constant and significant since the conduct began, through the present.

## **COUNT IV – NEGLIGENT SUPERVISION, TRAINING AND RETENTION AGAINST DEFENDANT**

31. Plaintiff incorporates all paragraphs and allegations in this Complaint listed above as fully alleged herein within Count IV of the Complaint.

32. Defendant was negligent in the supervising, training and retaining their employees as an employee. Defendant failed to train, supervise and monitor their employees in an appropriate manner. This ultimately led to the sexual harassment, harassment, retaliation and sexually inappropriate conduct directed by their employees against the Plaintiff. Defendant also failed to monitor and supervise their employee's activities outlined in this Complaint despite the fact they had direct actual knowledge of their employee's improper actions directed at women including the Plaintiff.

33. Defendant negligently retained its employees as employees after they received reports and knew about their inappropriate conduct and actions as outlined in this

15

Complaint in detail. This ultimately led to the sexual harassment, retaliation and sexually inappropriate conduct of their employees directed at the Plaintiff as outlined more fully above. Further, the Defendant negligently supervised, trained and retained management employees who did not properly handle their job in protecting the Plaintiff as outlined in the Complaint.

34. Defendant is liable for all negligence and recklessness of its employees under the theories of Respondeat Superior, Agency and Vicarious Liability for their failures as outlined in this Complaint. The employees of Defendant were acting in the scope of their employment and performing tasks of their employment which led to the situation causing the sexual harassment and sexually inappropriate conduct directed at the Plaintiff. Further, their employees were not properly trained or supervised (on appropriate actions directed at female employees). The policies, rules and procedures of Defendant were applied to their employees in a negligent fashion. Defendant is liable for the actions of their employees.

35. The actions of the Defendant have caused the Plaintiff to suffer severe mental injury. The sexual harassment, sex discrimination, sexually hostile work environment, hostile work environment based on sex and retaliation have caused the Plaintiff to experience nausea, sleeplessness, depression, anxiety, crying, being emotionally on edge, nightmares, fright, grief, sadness, shame, humiliation, embarrassment, anger, resentment, disappointment, worry, fear, stress, lack of motivation, view of men differently in the workplace and has affected Plaintiff's work ethic. Further, this situation has affected Plaintiff's relationship with her husband. It also caused Plaintiff to lose her job and career at the Defendant and resulted in lost wages as a result.

16

The intensity and frequency of the issues outlined in this paragraph of the Complaint have been constant and significant since the conduct began, through the present.

**Wherefore, Plaintiff prays for the following relief;**

1. That proper process issue requiring the Defendant to answer this Complaint in time prescribed by law;

2. Plaintiff moves this Court for an Order granting default judgement pursuant to Tennessee Rule of Civil Procedure 55 should the Defendant fail to answer the Complaint within the timeframe required by law;

3. Plaintiff demands against Defendant damages for back pay, front pay, compensatory damages, interest, damages for the damages proximately caused by the sexual harassment, sexually hostile work environment, hostile work environment, sex discrimination, and retaliation.

4. Plaintiff also demands against Defendant all compensatory and punitive damages available against Defendant for their actions as outlined in the Complaint for all other causes of action brought against Defendant.

5. Plaintiff demands compensatory damages against the Defendant in an amount to be determined by the trier of fact, but not in excess of $1,500,000.00. Plaintiff reserves the right to amend the complaint and monetary ad damnum to increase or decrease the damages based on appropriate factors;

6. That Plaintiff be awarded attorney's fees, litigations expenses and costs for the prosecution of this claim as provided under Tennessee law;

7. Plaintiff also requests general and equitable relief that may be available to the Plaintiff.

8. Plaintiff does not believe there is any valid arbitration agreement, however, to the extent there is any claimed arbitration agreement, the Plaintiff elects to proceed with litigation in Court and states the claimed arbitration agreement is not valid or enforceable as to all claims brought by Plaintiff pursuant to 9 USC § 401, 402;

9. Plaintiff requests the Defendant be required to pay all court costs, discretionary expenses and associated fees for this litigation;

10. That a jury of twelve (12) people try this cause; and

11. For any and all general just, reasonable, and necessary relief to which Plaintiff is entitled.

Respectfully submitted,

/s/ Jason A. Lee_____
**JASON A. LEE**
Registration No: 22890
Attorney for Plaintiff

**BURROW LEE, PLLC**
651 S. Mt. Juliet Rd., #194
Mt. Juliet, TN 37122
(615) 252-5591
Direct: (615) 540-1004
jlee@burrowlee.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this 5th day of November 2024, a true and correct copy of the foregoing document has been sent via the Court's CM/ECF system, and/or first-class United States mail, postage prepaid, addressed to:

J. Christopher Anderson, Esq.
Sarah V. Belchic, Esq.
**LITTLER MENDELSON, P.C.**
333 Commerce Street, Suite 1450
Nashville, TN 37201
chrisanderson@littler.com
sbelchic@littler.com

                                      /s/ Jason A. Lee
                                      **JASON A. LEE**

JAL/cl